RUSSELL, Judge.
This is an appeal by employees of a state agency. The employees challenged the reorganization of the Department of Human Resources (Department), and the trial court found that the reorganization was valid. The Department cross-appeals, alleging (1) that the court erred in finding that there was no emergency and (2) that even if there was not an emergency, the employees have no standing to enforce the notice provisions required under the regular rule-making process.
After an ore terms hearing, the findings of the trial court are favored with a presumption of correctness and will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom unless those findings are plainly and palpably erroneous or manifestly unjust. Popwell v. Greene, 465 So.2d 384 (Ala.1985); Chaffin v. Hall, 439 So.2d 67 (Ala.1983). “When any evidence exists or any reasonable inference can be drawn from it to support the trial court’s ore tenus findings, then we must affirm. Pickron v. State ex rel. Johnston, 443 So.2d 905 (Ala.1983).” Hayden v. State ex rel. Galanos, 513 So.2d 638, 639 (Ala.Civ.App.1987).
The Alabama code sections and Personnel Board rules pertinent to this case are as follows:
“In accordance with the rules, an appointing authority may lay off an employee in the classified service whenever he deems it necessary by reason of shortage of work or funds or the abolition of a position or other material change in duties or organization.”
Ala.Code (1975), § 36-26-26(a).
“670-X-18-.01 Layoffs. An appointing authority may lay off an employee whenever it is deemed necessary by reason of shortage of work or funds, or the abolition of a position or other material change in duties or organization....
[[Image here]]
“... Under no circumstance is a layoff to be used as a disciplinary action against an employee.”
State Personnel Board Rule 670-X-18-.01.
“(a) Prior to the adoption, amendment, or repeal of any rule, the agency shall:
“(1) Give at least 35 days’ notice of its intended action_ The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and the time when, the place where, and the manner in which interested persons may present their views thereon. The notice shall be given to the chairman of the legislative committee, as provided in section 41-22-23, and mailed to all persons who pay the cost of such mailing and who have made timely request of the agency for advance notice of *306 its rulemaking proceedings and shall be published, prior to any action thereon, in the Alabama Administrative Monthly. A complete copy of the proposed rule shall be filed with the secretary of the agency and the legislative reference service.
[[Image here]]
“(b) Notwithstanding any other provision of this chapter to the contrary, if an agency finds that an immediate danger to the public health, safety, or welfare requires adoption of a rule upon fewer than 35 days’ notice or that action is required by or to comply with a federal statute or regulation which requires adoption of a rule upon fewer than 35 days’ notice and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule shall become effective immediately, unless otherwise stated therein, upon the filing of the rule and a copy of the written statement of the reasons therefor with the legislative reference service and the secretary of the agency. The rule may be effective for a period of not longer than 120 days and shall not be renewable. An agency shall not adopt the same or a substantially similar emergency rule within one calendar year from its first adoption unless the agency clearly establishes it could not reasonably be foreseen during the initial 120-day period that such emergency would continue or would likely reoccur during the next nine months. The adoption of the same or a substantially similar rule by normal rule making procedures is not precluded.
“(c) It is the intent of this section to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative rules. Except for emergency rules which are provided for in subsection (b) of this section, the provisions of this section are applicable to the exercise of any rulemaking authority conferred by any statute, but nothing in this section repeals or diminishes additional requirements imposed by law or diminishes or repeals any summary power granted by law to the state or any agency thereof.”
Ala.Code (1975) (1982 Repl.Vol.), § 41-22-5.
“The commissioner shall interpret policies, rules and regulations formulated by the state board and shall have power, subject to the approval of the state board, to create within the state department such bureaus as are necessary for the effective operation of the public assistance program, and to allocate and reallocate functions among bureaus and departmental agencies.”
Ala.Code (1975), § 38-2-3(d).
The record shows that the plaintiffs (employees) are state merit system employees with the Department.
Each of the employees has been employed by the Department in excess of twenty years. On September 24, 1985, Gwendolyn Williams (Commissioner) was appointed Commissioner of the Department. At that time and for many years preceding 1985, the Department had been in a financial “crisis.” By the time the Commissioner was appointed, the Department was on the verge of defaulting on over six million dollars in debts it owed.
The Commissioner was aware of the financial condition of the Department. In the Commissioner’s opinion, an immediate reorganization was required to alleviate the financial situation and to foster better communication within the Department.
Thus, the Commissioner drafted a reorganization plan. This plan abolished the positions held by the employees. However, rather than being terminated, the employees’ job classifications were changed. This resulted in reduced responsibilities and reduced salaries for the employees. There was testimony at trial that the reorganization and changed job classifications resulted not only in monetary savings to the Department, but also in opening the lines of communication between the Department and the counties it served.
The Commissioner implemented the reorganization plan shortly after her appointment. According to her testimony, she per *307 ceived the Department to be in a state of emergency. Thus, the plan was implemented pursuant to an emergency rule provided for in the Alabama Administrative Procedure Act (AAPA), § 41-22-5(b), Ala. Code (1975) (1982 Repl.Vol.). The Commissioner also initiated regular rule-making procedures pursuant to the AAPA.
Under the emergency rule, the plan was scheduled to go into effect on December 6, 1985. However, if instituted through regular rule-making procedures, the plan would not have gone into effect until February 7, 1986.
The employees argued at trial that there had been no bona fide emergency necessitating the reorganization and that the reorganization plan implemented pursuant to the emergency rule was void. The employees argued also that the reorganization plan implemented pursuant to regular rule-making procedures was invalid because it was in violation of their constitutional rights and was the result of a conspiracy between the Commissioner and others.
After several ore tenus hearings over a span of two years, the trial court addressed the numerous issues raised in a lengthy, fifty-page opinion. The trial court made numerous factual findings and found in the main that the reorganization plan was valid, but that there had been no emergency. Further, the trial court found that there had been no violations of the employees’ constitutional or statutory rights and that there had been no conspiracy between the Commissioner and others in implementing the reorganization plan. We affirm.
The dispositive issues presented on appeal are as follows:
A. Whether the reorganization plan and resulting layoff were valid.
B. Whether the reorganization plan violated employees’ constitutional rights.
C. Whether the reorganization plan was the result of a conspiracy between the Commissioner and others.
As to the first issue of whether there was a valid plan, it is clear from a reading of the statutes and the Personnel Board rule that a layoff may be effected when a position is abolished so long as the layoff is not used as a disciplinary action.
The testimony at trial revealed that the financial crisis and communication problems which plagued the Department resulted in the reorganization of the Department. The employees’ positions were abolished pursuant to the reorganization plan. The trial court found that there was no evidence to suggest that the reorganization plan was used for disciplinary reasons.
Furthermore, it found that the fact that no one was actually separated from service did not change the fact that the reorganization plan effected a layoff rather than a demotion. The employees argue that because no one was actually separated from service, the layoff was, in fact, a demotion, and in support the employees cite Sullivan v. Teague, 424 So.2d 574 (Ala.1983). As the trial court points out, Sullivan is factually distinguishable and never reached the question presented in the case sub judice. Additionally, the court held that neither Sullivan nor § 36-26-26 required that knowledgeable, valuable, and experienced state employees be separated from state service because of a shortage of funds, abolition of an employee’s position, or a material change in organization. We agree.
Once the court determined that the plan itself was valid, it concluded that the implementation of the plan must be scrutinized.
The court found that the AAPA provides the guidelines to be followed in implementing the reorganization plan and resulting layoff. As noted in § 41-22-5(c), that section establishes the basic minimum procedural requirements for the adoption, amendment, or repeal of administrative rules. The Department argues that the procedural guidelines set out in the AAPA should not have been followed. Rather, the Department argues, the trial court should have followed the procedural guidelines set out in the Merit System Act. We do not agree. We find that under these facts the AAPA sets out specific procedural guidelines whereas the Merit System-Act *308 is rather vague and appears less restrictive on the agency.
We find that § 41-22-25 outlines the applicability and proper construction of the AAPA. That section provides that the rights created by the AAPA shall be in addition to rights created by any other statute. It further provides that the AAPA shall take precedence over any other statute which diminishes the minimal rights created by the AAPA, unless that statute expressly provides otherwise. In other words, if another statute grants additional rights to persons appearing before an administrative agency, that statute will supersede the AAPA. If, on the other hand, that statute purports to diminish the minimal rights granted by the AAPA, the AAPA controls. Thus, we find that the Department was required to follow § 41-22-5 in order to implement the reorganization plan.
The undisputed evidence reveals that the Commissioner drafted a reorganization plan and submitted it to the Department Board as required by § 38-2-3(d). The Board voted unanimously to approve the plan.
The plan was to be implemented through an emergency amendment, which was promulgated and adopted on November 15, 1985. The amendment, in pertinent part, states:
“Rule No. 660-1-2-.03, Organization of the State Department, is hereby amended in part and such amendment adopted by emergency action. Said amendment shall be effective at the Close of Business on December 6, 1985....
“The financial crisis confronting the Department is of such severe proportions that it threatens the Department’s ability to administer and supervise its welfare and public assistance functions in a responsible fashion. Any delay in the implementation of the reorganization plan adopted by resolution of the State Board of Pensions and Security on October 31, 1985, would only exacerbate the financial crisis confronting the Department and thus further handicap the Department’s ability to serve the public. Based upon these facts, it is deemed that there exists an immediate danger to the public welfare and relief to same warrants an emergency adoption of amendment to Rule No. 660-1-2-.03.”
The trial court found that there was indeed a financial crisis confronting the Department. However, as the trial court noted, this crisis had been in existence for many years and, thus, did not constitute an “emergency” as defined in § 41-22-5(b).
Because the trial court found there was no emergency, it ruled that the implementation of the plan pursuant to the “emergency rule” was void. However, the Commissioner had also instituted regular rule-making procedures under the AAPA, and the permanent rule was ultimately made effective on February 7, 1986.
For the days between December 6, 1985, when the emergency rule was supposed to go into effect, and February 7, 1986, the date when the permanent rule was actually made effective, the trial court ordered the Commissioner to reimburse the employees for back pay during that period.
The Department argues on cross-appeal that employees have no standing to enforce the thirty-five day notice requirement of § 41-22-5(b) because employees had actual notice of the reorganization. The Department is correct in noting that § 41-22-4(b) obviates the need to give notice of amendments pursuant to § 41-22-5(b) to persons who have actual notice of those amendments. However, as employees point out, notice is not the issue here. The issue is whether the Department properly implemented the amendment. The Department attempted to implement the amendment pursuant to the emergency provision of § 41-22-5(b). The trial court correctly decided that there was no emergency and that, thus, the amendment would have to be implemented through § 41-22-5(a).
Because there was no emergency, § 41-22-5(d) makes void the emergency amendment. The only method for implementation of the amendment, other than through the emergency provision, is to follow § 41-22-5(a), which requires thirty-five *309 days’ notice to be given, not only to those affected by the amendment, but to the public as well. We cannot hold that the trial court erred in requiring the Department to comply with the provisions of § 41-22-5(a).
We have reviewed the record extensively and cannot hold that the trial court’s findings constituted a palpable abuse of discretion as there is evidence within the record to support such findings. Therefore, as to whether or not the plan was valid, we affirm.
The next issue is whether the employees’ constitutional rights were violated.
The employees argue that the implementation of the reorganization plan violated their constitutional rights to substantive and procedural due process, equal protection of the laws, and first amendment rights. Additionally, employees claim that their rights under 42 U.S.C. § 1983 were violated. We support the trial court’s finding that these arguments are without merit.
“[A] determination of the process due in any situation depends upon the nature of the interest that is threatened. The requirements of due process cannot be determined in a vacuum: Due process is ‘flexible and calls for such procedural protections as the particular situation demands’. Morrissey v. Brewer, 408 U.S. [471] at 481, 92 S.Ct. [2593] at 2600 [33 L.Ed.2d 484 (1972) ].”
Whitehorn v. Harrelson, 758 F.2d 1416, 1425 (11th Cir.1985).
In the instant case we cannot say that the employees were not provided with the procedural protection demanded under these facts.
The evidence revealed that prior to the implementation of the plan, the employees were present at a meeting of the Department Board on October 31, 1985. At the meeting the Commissioner was seeking approval of the plan. The employees were represented by counsel at the meeting and were allowed to voice their opposition to the plan to the Department Board. All were given the opportunity to speak and argue.
At another meeting on November 19, 1985, the State Personnel Board met to consider, among other things, the Department’s request to abolish the positions held by employees. The evidence reveals that all of the employees were present and, except for Mr. Jennings, all were represented by counsel. Although they may not have been allowed to address the Personnel Board, their objections to the proposed reorganization were made known to the Board.
Finally, on December 5, 1985, the Commissioner allowed the employees, through counsel, to be heard once again.
The employees strenuously argue that because they were not provided with a notice that “set forth the alleged misconduct with particularity,” they were not provided with proper notice. We find this argument to be totally irrelevant. There was no allegation of misconduct which led to the reorganization plan. Thus, it would be ludicrous to require the Commissioner to provide employees with a statement of “alleged misconduct” to meet what the employees suppose is required to satisfy procedural due process.
We find that the evidence clearly supports the finding of the trial court that the employees were allowed the opportunity to be heard and that there was no violation of the employees’ procedural due process rights.
Additionally, we find that there is no evidence that the reorganization plan was implemented for concealed purposes or through arbitrary and capricious means. Thus, we cannot say that the trial court erred in finding that there was no violation of employees’ substantive due process or equal protection rights.
Likewise, as to the contentions that employees’ first amendment rights were violated, we find these to be without merit. In Holliyan v. Gayle, 404 So.2d 31 (Ala.1981), the plaintiff challenged his termination as a police officer on the grounds that such violated his first amendment rights. The supreme court held that
*310 “In order to successfully challenge a discharge from employment on first amendment grounds, the burden of proof is on the employee to establish that suppression of the constitutionally protected right was a ‘substantial factor’ or was a ‘motivating factor’ in the decision to terminate his or her employment.... While Holliyan offered evidence that he exercised his right to free association, he offered no evidence that the exercise of the right played any part in his termination.”
Holliyan, 404 So.2d at 34. The trial court found that the reorganization plan was not implemented to punish Jennings for his pessimistic projections for the Department and was not implemented to punish the other employees for their association with Jennings. We find that there was no evidence presented at trial to support these contentions. Thus, we cannot hold that the trial court’s finding was in error.
As to the § 1983 claim, such
“is conditioned on two essential elements: first, the conduct complained of must have been committed by a person acting under color of state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.”
Whitehorn, 758 F.2d at 1419.
To prove a § 1983 claim, the employees were required to prove that they were deprived of a federal right. We find that they have not done this. Thus, we must affirm the trial court’s decision regarding the § 1983 claim.
As to the last issue of whether there was a conspiracy between the Commissioner and others, we find that there was none.
In order to get around the obvious hearsay objections in their attempts to introduce certain statements at trial, the employees argued that such statements were of co-conspirators. However, we find that there was no evidence adduced at trial which would even hint that the reorganization plan was the result of a conspiracy between the Commissioner and others. Therefore, we find that the exclusion of the hearsay testimony was proper as the employees had not established a prima facie case of conspiracy.
After an exhaustive review of the briefs, the record, and the opinion of the trial court, we hold that the trial court did not err in finding that the reorganization plan was valid and constitutional. Further, we find that the trial court did not err in its conclusion that there was no emergency which required immediate implementation of the plan. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and ROBERTSON, J., concur.