Sandra H. **CARR**, et al., Plaintiffs,

v.

**STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES and Martha Nachman, in her official capacity as Commissioner of the State of Alabama Department of Human Resources, Defendants.**

Civil Action No. 96–D–1153–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 20, 1996.

---

Tracy S. McCooey, Shirley Z. Brown, Alabama State Employees Association, Montgomery, AL, for plaintiffs.

Sharon E. Ficquette, Ala. Dept. of Human Resources, Mark G. Montiel, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the plaintiffs' motion filed July 19, 1996, for temporary restraining order and preliminary injunction, which the court will analyze under the standard for issuing a preliminary injunction. *See* Fed. R.Civ.P. 65. The thirty-three plaintiffs in this action are permanent employees of the State of Alabama Department of Human Resources ("DHR") and are employed in the classified service pursuant to the State Merit System Act, *Alabama Code*, §§ 36–26–1, *et seq.* The two defendants are the State of Alabama Department of Human Resources and Martha Nachman, who is being sued in her official capacity as the Commissioner of DHR ("Commissioner Nachman").

The plaintiffs request the court to enjoin Commissioner Nachman from reassigning them from their present positions to surrounding DHR county offices within the State of Alabama. On July 30, 1996, the court held a hearing on the plaintiffs' motion and thereafter directed the parties to file briefs and evidence in support of their respective positions. After careful consideration of the arguments of the parties, the relevant case law and the record as a whole, the court finds that the facts of this case do not warrant the issuance of a preliminary injunction.

1. At the hearing held on July 30, 1996, Commissioner Nachman agreed to extend the reassignment date to August 19, 1996, in order to allow the parties additional time to submit briefs and evidence in support of their positions prior to the court issuing its ruling. Yesterday, Commissioner Nachman again generously extended the dead-

## JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. *See Carr, et al. v. State of Alabama Dep't of Human Resources, et al.,* Civ.A. No. 96–D–1153–N, at 8 (M.D.Ala. July 30, 1996) (De Ment, J.) (denying the plaintiffs' motion to remand this action to state court on the ground that the relief requested could have "a direct and adverse impact" on the consent decree and order entered in the related case of *R.C. v. Nachman,* Civ.A. No. 88–D–1170–N (M.D.Ala. Dec. 18, 1991)). Personal jurisdiction and venue are uncontested.

## FINDINGS OF FACT

At Commissioner Nachman's directive, the plaintiffs have been selected for mandatory reassignments to DHR child welfare positions in various counties throughout the state. Commissioner Nachman has determined that these reassignments are necessary in order to comply with the consent decree issued in *R.C. v. Nachman, supra,* under which DHR must maintain adequate staffing in child welfare positions in each DHR county office.

Commissioner Nachman circulated a memorandum dated June 5, 1996, to all DHR Deputy Commissioners, directing them to meet with their division/office directors to determine the staff needs within the DHR county offices. In the same memorandum, Commissioner Nachman listed 103 county staff positions that she would be filling and asked for staff volunteers to fill those positions. She further stated in the memorandum that all "transfers," both voluntary and mandatory, would take effect by August 3, 1996.[1] Subsequently, Commissioner Nachman circulated a second memorandum dated June 27, 1996, to all Deputy Commissioners, Regional Managers, Division/Office Directors and County Directors and therein listed the names of sixty-five individuals who would be

line. The court appreciates Commissioner Nachman's willingness to assist the court by providing it additional time to resolve the complex issues now before it, thus, preventing the necessity of the court considering the issuance of a temporary restraining order.

reassigned. Each of the plaintiffs were included on this list.

According to the defendants, four criteria were considered in selecting which employees to reassign. The state officials responsible for establishing the criteria were the Commissioner, the Assistant Commissioner, the Deputy Commissioner for Field Administration, and the Deputy Commissioner for Programs and Personnel Director of DHR. In making their selections, the defendants considered the following four criteria: (1) whether the employees are presently "out-based," or, in other words, not working in DHR's state office in Montgomery, as well as the employees' proximity to the county office with child welfare staffing needs; (2) whether the employees have program experience in DHR's Family & Children's Services and Adult Services; (3) whether the employees had earned either a bachelor's degree in social work, a master's degree in social work, or degrees in early childhood and/or child development; and (4) whether the employees were in the program specialist classification.

The DHR personnel office notified the plaintiffs by telephone that they would be reassigned from their current positions with DHR into other positions with DHR county offices in the state. Many of the plaintiffs wrote Commissioner Nachman letters and stated that reassignments would create a substantial hardship on both them and their families. Of the twenty-five hardship requests, five were granted. These five were granted on the basis of medical reasons, i.e., a medical problem existed which required the employee to care for a child, parent or other close relative. Of the thirty-three plaintiffs, two requested hardship considerations based on medical reasons, and those two requests were granted. Commissioner Nachman denied the remaining plaintiffs' requests and

noted in each letter that "[q]uality staff are needed in the county departments to meet the child welfare floors established for conversion counties prior to our arrival." *See, e.g.,* Pl.s' Mot.Prel.Inj., filed July 19, 1996 (letters attached thereto).

In Count I, the plaintiffs request the court to "[d]eclare that these transfers are in effect constructive layoffs and are in violation of State Personnel Board Rules and the Merit System Act" and to "[g]rant a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction restraining Defendant Nachman from forcing these DHR employees to relocate." Pl.s' Compl. at ¶ 46. In Count II, the plaintiffs further request the court to "[d]eclare that these transfers violate Plaintiffs' substantive and procedural due process rights because Plaintiffs were not given notice or afforded the opportunity to be heard concerning these transfers" and to "[d]eclare that these transfers violate Plaintiffs' equal protection of the laws because these transfers are not being done pursuant to fair and unbiased transfer guidelines."[2] *Id.* at ¶ 46. In Count III, the plaintiffs request the court to "[d]eclare that Defendant Nachman has undertaken a reorganization of the department, but has failed to comply with the reorganization requirements of the Alabama Administrative Procedure Act as set forth in section 41–22–5" of the *Alabama Code. Id.* at ¶ 53.

## LEGAL STANDARDS AND CONCLUSIONS OF LAW

### I. *Standard for Obtaining a Preliminary Injunction*

The granting or denying of a preliminary injunction is within the sound discretion of the district court.[3] *Johnson v. Radford,* 449

---

**2.** In their brief, the plaintiffs concede that their substantive due process claim is prohibited under *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994), *cert. denied, sub nom. McKinney v. Osceola County Bd. of County Com'rs,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Also, neither at the hearing nor in their brief have the plaintiffs raised the equal protection claim as a basis for their motion for preliminary injunction. Accordingly, the court need not address either the

substantive due process or equal protection claims at this stage of the litigation.

**3.** As previously stated, *supra* at 1498, the court will analyze the evidence under the standard for issuing a preliminary injunction. On July 26, 1996, the court entered an order setting a hearing on the motion for temporary restraining order. The plaintiffs' complaint, however, requests both a temporary restraining order and a preliminary injunction.

F.2d 115, 116 (5th Cir.1971).[4] While Rule 65 of the *Federal Rules of Civil Procedure* covers only procedural requirements for issuing a preliminary injunction, federal courts have interpreted Rule 65 to incorporate several common law substantive requirements.

That is, the party moving for a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may cause the opposing party; and (4) that granting preliminary injunctive relief is not adverse to the public interest. *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir. 1990); Fed.R.Civ.P. 65. The court need only reach the first prong of the analysis since it concludes that the plaintiffs have not shown a substantial likelihood that they will prevail on the merits. *Gold Coast Publications, Inc. v. Corrigan,* 42 F.3d 1336 (11th Cir.1994), *cert. denied,* — U.S. ——, 116 S.Ct. 337, 133 L.Ed.2d 236 (1995).

■ The purpose of a preliminary injunction is to protect the movant from irreparable injury and to preserve the status quo until the district court renders a meaningful decision on the merits. *Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567 (5th Cir. 1974). In other words, the plaintiffs are not required to prove [their] case in full at a preliminary-injunction hearing. *Progress Development Corp. v. Mitchell,* 286 F.2d 222 (C.A.7 1961), and the findings of fact and conclusions of law made by a court ... are not binding at trial on the merits, *Industrial Bank of Washington v. Tobriner,* 132 U.S.App.D.C. 51, 54, 405

F.2d 1321, 1324 (1968); *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 742 (C.A.2 1953). In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits. *E.g., Brown v. Chote,* [411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973) ] *supra; Gellman v. Maryland,* 538 F.2d 603 (C.A.4 1976); *Santiago v. Corporacion de Renovacion Urbana Y Vivienda de Puerto Rico,* 453 F.2d 794 (C.A.1 1972).

*University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Finally, "at the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir.1995) (quoting *Asseo v. Pan American Grain Co.,* 805 F.2d 23, 26 (1st Cir.1986)).

## II. Analysis

■ In ruling on the plaintiffs' motion for preliminary injunction, the court must examine the provisions of the Alabama Merit System Act, §§ 36–26–1 *et seq.,* and the rules adopted by the state personnel board. The defendants assert that § 36–26–24 of the *Alabama Code* governs in this action, and they further contend that they have complied with this code section. All reassignments and transfers of merit system employees are governed by § 36–26–24 of the *Alabama Code,* which provides that

---

Rule 65(b) of the *Federal Rules of Civil Procedure* provides that a temporary restraining order may be granted "[o]nly if it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed.R.Civ.P. 65(b). Generally, a temporary restraining order may not exceed twenty days, after which the court must conduct a hearing to determine whether a preliminary injunction should issue.

A preliminary injunction is effective until the court renders its decision on the merits but may not issue until the opposing party has had notice

and an opportunity to be heard. *See* Fed. R.Civ.P. 65. Here, the court finds that treating the motion as a request for preliminary injunction is particularly appropriate because the defendants had notice of the motion, were present at the hearing held on July 30, 1996, and have had an opportunity to submit arguments and evidence in support of their position.

**4.** The Court of Appeals for the Eleventh Circuit, in the *en banc* decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[a]n appointing authority may, at any time, assign a classified employee under his jurisdiction from one position to another in the same class. Any classified employee may be transferred from one department to another in the same class; provided, that the director shall have authorized the transfer and shall have received the approval of both appointing authorities concerned. In every case involving transfer, the appointing authority shall submit a written request to the director.

Ala.Code, § 36–26–24 (1975) (emphasis added). *See also* § 670–X–9–.04, *State Personnel Board Rules* (same).

However, in Count I of the complaint, the plaintiffs contend that the "transfers"[5] are tantamount to "constructive layoffs" and that the defendants must follow the procedures governing "layoffs" as set forth in § 36–26–26 of the *Alabama Code. See* Pl.s' Compl. at ¶ 43. In the alternative, the plaintiffs contend that, even if the court determines that § 36–26–24 governs in this action, the defendants have failed to submit a written request to the State Personnel Director as provided therein. Section 36–26–26 provides, in pertinent part, as follows:

(a) In accordance with the rules, an appointing authority may lay off an employee in the classified service whenever he deems it necessary by reason of shortage of work or funds or the abolition of a position or other material change in duties or organization. The seniority and service ratings of employees shall be considered, in such manner as the rules shall provide, among the factors in determining the order of layoffs. The appointing authority shall give written notice to the director of every proposed layoff a reasonable time before the effective date thereof, and the director shall make such orders relating thereto as he considers necessary to secure compliance with the rules. The name of every regular employee so laid off shall be placed on the appropriate reemployment list.

(b) In addition to any rights currently provided to state employees, any perma-nent state employee who is laid off from a position under the state merit system shall have priority for any other position in the same class filled from an open competitive register by any appointing authority in accordance with rules adopted by the state personnel board.

Ala.Code, § 36–26–26 (1975).

■ Hence, the court first must determine which code section applies in this action. The plaintiffs assert that the "transfers" (i.e., reassignments) are, in reality, "constructive layoffs" because "Commissioner Nachman is deliberately forcing many of the plaintiffs to either retire or resign by requiring them to vacate their current positions with DHR's state office and transfer them to DHR county offices." Pl.'s Br. in Supp. of Mot. for TRO and Prelim.Inj., filed Aug. 6, 1996, at 8. In support thereof, the plaintiffs rely on the well-established "constructive discharge" doctrine and cite *Irons v. Service Merchandise Co.,* 611 So.2d 294 (Ala.1992). In *Irons,* a case involving a constructive discharge claim in retaliation for filing a workers' compensation claim, the court applied the "constructive discharge" doctrine that federal courts employ to review employment discrimination claims:

The general rule of "constructive discharge" is as follows: "[I]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."

*Id.* at 295 (citations omitted).

For example, the plaintiffs point to the fact that Commissioner Nachman has offered the plaintiffs a "special option available for retirement if this choice is made by September 1, 1996." *See* Pl.s' Br. in Support of Mot. for TRO and Prelim.Inj., filed Aug. 6, 1996 (Attachment 1). According to the plaintiffs, six of the thirty-three plaintiffs already have applied for retirement because of the mandato-

---

**5.** As discussed *infra,* the court finds that the "transfers" as referred to by the plaintiffs are reassignments within the meaning of the first sentence of § 36–26–24.

ry reassignments. The plaintiffs assert that this memorandum constitutes an admission by Commissioner Nachman "that she anticipates DHR employees retiring or resigning rather than transferring." Pl.s' Br.Supp. of Mot. for TRO and Prel.Inj., at 8–9.

■ The court empathizes with the adverse impact many of the plaintiffs are experiencing as a result of the reassignments. However, the court disagrees with the plaintiffs' position and finds that the actions directed by Commissioner Nachman constitute reassignments within the meaning of the first sentence of § 36–26–24 and are not "layoffs" under § 36–26–26. The court finds that the relocation of the plaintiffs are "reassignments" within the meaning of the first sentence of § 36–26–24 because the reassignments are intradepartmental. "Transfers," as that word is used in the second and third sentences of said code section, refers to interdepartmental transfers, i.e., transfers between different departments. Moreover, while an unfortunate result may be that some employees will choose to resign or to retire instead of submitting to a reassignment, the court finds that the evidence does not reveal an intent on the part of Commissioner Nachman to force employees to do so.

The court recognizes the difficult dilemma with which Commissioner Nachman is faced. Commissioner Nachman is under a legal duty to ensure compliance with the consent decree in *R.C. v. Nachman, supra,* yet also, she is responsible for maintaining an effective operation of all facets of DHR. The court is cognizant of the frustrations which Commissioner Nachman has expressed to the media concerning the maintenance of efficient and effective services and, at the same time, ensuring that DHR meets the standards imposed on it by the constitutions, state statutes and consent decree. With this background in mind, the court emphasizes that the intent behind Commissioner Nachman's decision to offer a special retirement plan is subject to more than one interpretation. That is, the offer of a special retirement option just as easily could be interpreted as a good faith attempt by Commissioner Nachman to accommodate the plaintiffs by giving them an extra option in lieu of a reassignment.

In fact, there is no evidence that Commissioner Nachman is either unsatisfied with the plaintiffs' job performances or that she is otherwise deliberately seeking to force the plaintiffs to resign or to retire. In her affidavit, Commissioner Nachman states as follows: "None of the employees transferred within [i.e., assigned to different offices within DHR] are being laid off. I made a conscious decision not to lay off any employees but to transfer [i.e., reassign] employees. My Personnel Director, Waldo A. Spencer, was urged by the State Personnel Department employees ... to transfer [i.e., reassign] employees rather than effect any layoffs." Def.s' Br., filed Aug. 6, 1996 (Ex. 12 attached thereto) (brackets added).

Additionally, there is no evidence that any of the plaintiffs are being terminated from their positions or being separated from their employment with DHR. Rather, the evidence reveals that each plaintiff is being reassigned within the same department from a position in the State office in his or her permanent merit system classification to a position in a county office in the same permanent merit system classification. In *Sullivan v. Teague,* 424 So.2d 574 (Ala.1982), the Supreme Court of Alabama held that a reassignment of a Department of Education employee from a position as a Vocation Rehabilitation Counselor II to a position as a Disability Examiner in another city, without changes in salary, benefits, or standing in the department, was not a "layoff" within the meaning of § 36–26–26.

The plaintiffs do not seriously dispute that, after being reassigned, the majority of the plaintiffs will receive the same salary and benefits as they possess in their current positions. The plaintiffs assert, however, that approximately ten of the plaintiffs, who presently are serving in provisional appointments, will suffer salary reductions after being reassigned.[6] The defendants assert that

---

**6.** A "provisional appointment" is defined as follows:

Whenever it is impossible to certify eligible persons for appointment to vacancy in the

these plaintiffs will revert to their last permanent status merit system classification. However, the plaintiffs urge the court to view the potential salary decrease as another factor indicating Commissioner Nachman's intent to force the plaintiffs to resign or to retire. The court disagrees that the potential salary decrease renders the reassignments, in effect, a layoff. The plaintiffs serving in these provisional appointments are temporary and received no guarantee that their positions would become permanent.

The plaintiffs further contend that certain plaintiffs will suffer undue hardships because they will be forced to sell their homes, will incur increased financial burdens from commuting long distances in personal vehicles and hiring babysitters, will be separated from their families and will have to undergo extensive retraining in order to perform their new job duties. The plaintiffs urge the court to take into account such equitable considerations. While the court empathizes with the unfortunate circumstances that some of the plaintiffs will experience as a result of the reassignments, the court's ruling must be grounded in precedent and legislation, not sympathy. As attributed to Oliver W. Holmes, "[s]ympathy is one of the finest human attributes but is an unwelcome intruder in the courtroom.".

While recognizing the inconvenience of the reassignments, the court at the same time emphasizes that only the following six plaintiffs will be required to travel more than fifty miles: (1) Clare Castleman—Montgomery to Houston County, 104 miles; (2) Regina King—Montgomery to Barbour County, 72 miles; (3) Edwin Walker—Montgomery to Jefferson County, 90 miles; (4) Florence Yates—Chambers County to Perry County, 137 miles; (5) Gloria J. Kendrick—Montgomery to Houston County, 104 miles; and (6) Gary Turner—Escambia County to Butler County, 62 miles. Significantly, fifteen of the plaintiffs will continue to work in the same city in which they are presently employed, while twelve of the plaintiffs will be required to travel less than fifty miles.

The court notes that the reassignments directed by Commissioner Nachman are not unique and that state agencies frequently reassign their employees from one city or county to another when the need arises. *See Sullivan v. Teague*, 424 So.2d 574 (Ala.1982) (upholding the reassignment of a Department of Education employee from the position of vocational rehabilitation counselor II to position as a disability examiner in another city); *Williams v. James*, 420 So.2d 773 (Ala. 1982) (holding that the Commissioner of the Department of Pensions and Security had statutory authority to reassign state employees to the county level). In sum, the court finds that the evidence presented is not strong enough to show a substantial likelihood of success on the merits that Commissioner Nachman deliberately intended to make the plaintiffs' working conditions so intolerable that the plaintiffs would resign or retire, nor does the evidence indicate that any of the plaintiffs are being terminated from their service with DHR.[7]

The plaintiffs next contend that the defendants have violated their procedural due pro-

classified service, the appointing authority may nominate a person to the director. If such nominee is found by the director to have had experience and training which appear to qualify him for the position, the director may authorize the appointment of such person to such vacancy only until an appropriate register can be established and appointment made therefrom. In no event shall a provisional appointment be continued for than 156 work days. Successive provisional appointment of the same person shall not be made. Ala.Code, § 36–26–18 (1975).

7. The court is cognizant of the concerns expressed in the amicus curiae brief filed by counsel for the plaintiffs in *R.C. v. Nachman*. Because those issues are exceedingly complicated and of such magnitude, the court will consider those issues when ruling on the motions to modify the consent decree, which presently are pending in *R.C. v. Nachman*.

The court assumes that the reassignments herein effected by Commissioner Nachman are in her judgment necessary and proper for the administration and functioning of her department. Thus, the court assumes that these reassignments will not be affected by any change, modification or amendment, which may or may not be entered concerning the consent decree in *R.C. v. Nachman*. The court further assumes that Commissioner Nachman has ordered such reassignments so that her department will meet its statutory and constitutional duties, irrespective of the existence of the consent decree.

cess rights by reassigning them without following proper procedures as set forth in § 36–26–24 of the *Alabama Code* and Rule 670–X–9–.03(3)(d) of the *Rules of the State Personnel Board.*[8] Namely, the plaintiffs contend that, under § 36–26–24, Commissioner Nachman was required to make a written request to the State Director of Personnel before directing the reassignment of the plaintiffs. The defendants, however, argue that approval from the Director of Personnel is not necessary when the reassignments are intradepartmental.

After careful examination of § 36–26–24, the court finds that this code section, on its face, makes a distinction between "assignments," as used in the first sentence, and "transfers," as used in the second and third sentences. The statute directs that when the appointing authority determines that it is necessary to reassign employees within the same department, as here, the appointing authority may do so "at any time." Transfers between departments, however, require prior approval and authorization from the appointing authorities of each department involved in the transfer, following a written request to the State Director of Personnel.

▪ While the State in other cases involving § 36–26–24, and even in this case, has used the words "transfer" and "assign" synonymously, it is clear to the court that the drafters intended to distinguish between the two terms. Hence, the court finds that the third sentence of § 36–26–24—which states that "in every case involving transfer, the appointing authority shall submit a written request to the director"—is applicable only to interdepartmental transfers and not intradepartmental reassignments. In fact, this interpretation appears to be consistent with the policy of the Personnel Director. State Personnel Director Dr. Halycon Vance Ballard—although she falls into the same trap that many others have by interchanging the

words "assign" and "transfer"—stated in a departmental memorandum that neither she nor the State Personnel Board are required to approve intradepartmental reassignments and, in fact, do not have the authority to do so. *See* Def.s' Br., filed Aug. 6, 1996 (Ex. 7, attached thereto).

Furthermore, besides giving meaning to its clear language, the court believes that this interpretation gives a common sense meaning to the statute; otherwise the code section would mandate the micro-management of the various state departments. Moreover, the court believes that the Legislature did not intend to require the Personnel Director to authorize every reassignment within a state department because such a mandate would be unduly burdensome and would lead to an unnecessary layer of bureaucracy.

Thus, the court finds that the third sentence of § 36–26–24 is inapplicable to the present set of facts before the court because Commissioner Nachman's actions merely involve reassignments within a single department.[9] Accordingly, the court finds that the plaintiffs have failed to show a substantial likelihood of success on the merits that the defendants have violated their procedural due process rights by failing to have Commissioner Nachman submit a written request to Dr. Ballard prior to reassigning the plaintiffs.

▪ Finally, the court finds without merit the plaintiff's contention that their reassignments constitute a reorganization of DHR. In arguing reorganization, the plaintiffs insist that the defendants must comply with the dictates in *Oliver v. Williams,* 567 So.2d 304 (Ala.Civ.App.1989), a case involving the 1989 reorganization of DHR, and the applicable regulations stated therein. The court carefully has studied the *Oliver* case, as well as the arguments of both the plaintiffs and the defendants. The court finds that this case is

---

**8.** The pertinent portion of Rule 670–X–9–.03(3)(d) tracks the language of § 36–26–24.

**9.** The court has found no case law concerning whether a written request is required for intradepartmental transfers. The court also notes that it is ironic, that in the first instance, the plaintiffs argue that reassignments within the department

are "transfers" amounting to constructive layoffs. Failing that, the plaintiffs then urge upon the court that any "transfer" (reassignment) must be by written request to the Personnel Director. Indeed, the plaintiffs argue the meaning of the word "transfer," as used in § 36–26–24, to project two different meanings.

factually distinguishable from *Oliver* and that, for the same reasons, discussed *supra,* the reassignments of the plaintiffs are reassignments within the meaning of the first sentence of § 36–26–24 of the *Alabama Code* and nothing more.

It appears that the shortage of personnel in the field, the functioning of which is the primary mission of DHR, is an emergency situation, and not a reorganization of the headquarters or department. The court further notes that only 1.5 percent of DHR's staff has been affected by the reassignments.[10] The court has examined the arguments of the parties and finds that the plaintiffs have failed to show a likelihood of success on the merits on their claim that DHR has undergone a reorganization in directing the reassignments of the plaintiffs.[11]

## CONCLUSION

For the foregoing reasons, the court finds that the plaintiffs have not demonstrated a substantial likelihood of success on the merits, and thus, the facts of this case do not warrant the issuance of a preliminary injunction. Accordingly, it is CONSIDERED and ORDERED that the plaintiffs' motion for preliminary injunction be and the same is hereby DENIED.

All other questions are reserved.

---

**10.** While DHR has more than 4,200 employees, only sixty-five of those employees are affected by these reassignments, and only one classification under the merit system is affected.

**11.** At the hearing held on July 30, 1996, the court inquired about whether the plaintiffs could be assigned back, at a later date, to the positions they currently hold. The defendants state in their brief that "the functions and responsibilities that the plaintiffs currently perform will be absorbed by other individuals employed in those specific programs and/or by decentralization of certain functions and responsibilities." Def.s' Br., filed Aug. 6, 1996, at 21. The court simply reiterates that, assuming these positions do become open for any reason at a later date, the court expects Commissioner Nachman to first consider the plaintiffs for these positions.